Carr, J.
The appellants allege in their bill, that they ■furnished supplies of merchandize to the amount of 344 dollars, for the use of Markham and his family, between the first of June and the last of October 1818, and that they furnished these supplies on the credit of the trust estate. Yet it is clear, these dealings took place without any previous directions from Fleming (the only acting trustee) to them, to credit Markham, for the goods; or any communication with him on the subject. Was this a safe and prudent course in the plaintiffs? Could they charge the trust subject by crediting Markham, without the knowledge or assent of the trustee? Look at the circumstances of the case; the manifest occasion and intention, and the provisions, of the deed of trust. Here was a man with a wife and eleven children, whose habits and course were likely to waste his estate, and bring his family to want; to arrest this-evil, and take out of his hands, the management of his affairs, and the power of dissipating his property, he is prevailed on to execute this deed, by which he strips himself of every atom of his estate; making provision for debts already contracted, but expressly disabling himself from so incurring future debts, as to make the property (no longer his) liable for them. This he had a right to do, and it was done openly; the deed was duly recorded, and the facts, of necessity, known to these appellants; for they state, that they dealt upon the credit of the trust fund, and make the deed an exhibit. By this deed they were told, that this was a per *285 manent fund, the profits of which alone could be taken for „ . . . the yearly maintenance oí this large family; Jor it is clearly expressed, that the parties could not sell an atom of the principal except for the payment of the existing debts of Marie-ham. Nor was the trustee as in the case of Scott v. Laraine, 6 Munf. 117. bound to permit the cestuis que trust “ to receive, take and enjoy all the interest and profits of the estate,” thereby rendering it safe to deal with them to the amount of those profits; but the whole profits here, were to be applied by the trustees to the payment of the debts and support of the family. In Scott v. Loraine, the purpose of the deed was merely to intercept the marital rights, and shield the property from the husband’s creditors: here it was to shield it from the improvidence and waste of the cestuis que trust, and to make that which, under their management, would have been dissipated in a short time, a permanent fund, which should, from its profits, furnish some support to the family during the life of the father and mother, and then be divided among their children; whereby they gained a vested interest, which, so far at least as the land was concerned, could not, even by a court, be divested during their infancy, except for debts of the grantor, existing at the date of the deed. The commissioner estimated the annual profits of this fund, at only 300 dollars; and we know that such estimates are generally beyond the mark. However this may be, it behooves every one, who deals on the credit of a fund like this, to look to the deed, and see how much can be disbursed; and to make his bargain beforehand with the trustee. In this case, then, I do not think, that the appellees, by their dealings with the family, acquired any right to charge the trust fund : if they did, every other person who chose to let the cestuis que trust have goods or property, would have the same right; and thus the check interposed by the deed would be destroyed, and one year’s extravagance swallow up the revenue of years to come, and leave the wife and children to starve.
*286 The' appellees, however, do not rest their claim on the ,so^e ground of this dealing with the family. After closing the account, they made application by letter to the trustee; and they rely on his answer as an assumpsit of the debt. This letter acknowledges the receipt of tbeir’s of the day before; and says he had had but a slight view of their account, which Markham, had carried away with him, but that if they will agree to wait till the next crop, he will assume to pay them out of the trust estate, being willing, while he remains trustee, that every thing that should be made on that estate for market, should be applied to furnish necessaries for the family, though not at the will or caprice of Markham, who is generally much deranged in his mind. This, it will be observed, is rather a proposition to assume, provided the creditors would wait, than an actual assumpsit. But take it for. an assumpsit; to what does it amount? A promise to pay out of the produce of the next crop made on the trust estate, for market. Could the trustee bind the fund in this way? Could he incur in one year, debts to'the amount of several years profits, and thus by anticipation absorb the support of future years? I incline strongly to think not.. He is intrusted with the fund, not to squander at will, but to husband, protect, and apply it according to a sound discretion, to the support of the family from year to year. In regard to this point, his duty resembles a good deal that of a guardian ; who, we know, is not suffered in any year to go beyond the profits of his ward’s estate, without the express permission of the court. Here was a yearly fund of 300 dollars, for the yearly support of the family; to constitute which support, many articles would be necessary, besides merchandize; and yet we see, that, in the term of six months, these merchants have raised an account of more than the whole annual income; and that income, for the current year, having been already spent, this debt is to be thrown upon the next year’s revenue. The whole, will not pay it: how, then, was the family to be supported ? The deed gives no power to the trustee to break in upon *287 the principal. Could he thus by anticipation rob the family of their support ? I would much sooner say, that he should be personally bound by any such promise, than that he should bind the fund ; and if before opening an accoifnt with the family, these merchants had applied to the trustee to know how far they might go in trusting the cestuis que trust, and he had said, “ you may let them have goods to the amount of 300 dollars,” I would have held him personally liable in the first place, and have left him to reimburse himself from any annual surpluses, after supporting the family, if any such should chance to occur. But they have taken no such prudent course ; they have gone on at their own risk, to furnish goods to this family, to a most extravagant amount, compared with their income; and they must abide the consequences of their own imprudence.
Another objection to the claim of the appellees, is, that they have not established their account. They rely for this, on the trustee’s letter, and the answer of some of the defendants ; but these, in my mind, are very inadequate to the purpose. The letter cannot be fairly considered as the slightest acknowledgment of the justice of the items in the account; for the writer expressly says, that he had had but a few moments to look at it, and that he must get it again. He evidently had no idea of admitting the items; but merely meant to say, that he was willing the profits of the estate should be applied to what might be found due. So Mrs. Markham,, in her answer, merely says that the plaintiffs furnished her husband with goods to a large amount; but this is wholly indefinite, and no more proof of the account rendered, than of one double its amount, and consisting of items wholly different. So of the answer of B. Markham; it amounts to nothing like proof. The trustee in his answer objects strongly, both to the enormous amount of the account, compared with the income, well known to the plaintiffs, and also to many items in it; and disclaims all idea of intending to admit by his letter, any more than should be proved to be due.
*288 Upon the whole, I think the decree should be reversed and the bill dismissed, without prejudice to any other remedy to which the appellees may be advised to resort.